UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
*************************************************************

PATRICK D. DEERING.

      Plaintiff,

v

BERNARD FEENEY, D/B/A
GULF OF MAINE BOAT SURVEYORS,

      Defendant.

Case No.:

Honorable

Original Action

---

Richard A. Marvin (P41433)
MARVIN & ASSOCIATES
Attorneys for Plaintiff
5181 Plainfield Avenue, N.E., Ste. C
Grand Rapids, MI 49525
Telephone: (616) 447-1664
Fax: (616) 447-1665
Email: rick@marvlaw.net

---

## COMPLAINT AND JURY DEMAND

NOW COMES Plaintiff, Patrick D. Deering, by and through his attorney, Richard A. Marvin of Marvin & Associates, Attorneys and Counselors at Law, and for his Complaint against Defendant, Bernard Feeney, d/b/a Gulf of Maine Boat Surveyors, states:

1

## JURISDICTIONAL ALLEGATIONS

1. Plaintiff, Patrick D. Deering, (hereinafter, "Deering"), is a resident of the State of Michigan residing at 12776 South Maple City Road, Maple City, Michigan 49664.

2. Defendant, Bernard Feeney, d/b/a Gulf of Maine Boat Surveyors (hereinafter "Feeney") is a resident of the State of Massachusetts, engaged in the business of Marine Surveying with his principal office and headquarters located at 197 Pleasant Street, Whitman, MA 02382..

3. There is personal jurisdiction over Feeney in Michigan.

4. Feeney has at all times herein relevant and material, continuously and systematically conducted and transacted business throughout the United States, including the state of Michigan wherein he entered into a contract with Deering, a Michigan Resident, for the purpose of performing a marine survey and Report of Marine Survey.

5 This Court has jurisdiction over this matter pursuant to 28 U.S.C. §1332 because the parties are citizens of different states and the damages in controversy in this case amount to more than Seventy Five Thousand and 00/100 Dollars ($75,000.00), exclusive of interest and costs.

## GENERAL ALLEGATIONS

6. Plaintiff realleges paragraphs 1 through 5, above.

7. During the month of June 2019, Feeney and Deering entered into a contract for Feeney's Marine Survey of a vessel known as the "EXTREMELY FUELISH," then located in Mendon, Massachusetts.

8. That in entering into said contract, Feeney represented himself as

having a specific, professional expertise in the performance of a marine survey and Report of Marine Survey for the said vessel.

9. That in entering into the said Marine Survey contract, Feeney was advised of the fact the survey was for the purpose of determining whether the vessel was seaworthy and fit for Deering's intended purpose of cruising the Great Lakes, as well as for determining its market value, both of which Feeney was advised, would bear on Deering's decision whether or not to purchase the vessel. These facts are confirmed in Feeney's June 19, 2019 Report of Marine Survey, page 4, where he states that "the reason for the survey was to ascertain the physical condition and value of the vessel for (purchase consideration)."

10. That pursuant to the contract, Feeney surveyed the vessel and prepared his Report of Marine survey dated June 19, 2019, which he then emailed to Deering on June 20, 2019 in advance of Deering's decision to purchase the vessel.

11. That Feeney's June 19, 2019 Report of Marine Survey opined that the vessel, "EXTREMELY FUELISH" was of "fair" overall condition and that "the vessel [was] considered suitable for its intended use and an acceptable risk," provided that certain, recommended safety equipment was updated.

12. That Feeney's June 19, 2019 Report of Marine Survey (Pg. 5) defines "fair condition" as "functional as is with minor repairs," and ""Fit for intended use" as "Use which is intended by Survey Purchaser."

13. That upon Deering adding some fire extinguishers and flares recommended by Feeney's original Report of Marine Survey in August 15, 2019, Feeney revised the survey to remove "the designation of "FAIR" and am now able to return the vessel to an "AVERAGE" designation with the safety equipment

3

additions to the vessel's inventory." Feeney's Report of Marine Survey further defines "Average Condition," as "ready for sale requiring no additional work."

14. However, after relying upon Defendant's promises, representations, contractual obligations and report, Plaintiff Deering purchased the XTREMELY FUELISH after which further inspection in Michigan determined the vessel to be in poor condition and in need of substantial yard work to repair numerous, rotting structural members in the hull that Defendant Feeney either failed to inspect and test for and discover or else simply failed to accurately report the results of same.

15. That close visual inspection, moisture readings, and percussion soundings requisite of a marine surveyor pursuant to the standards of the Marine Surveyor industry, let alone the greater standard of care expected of a surveyor representing the special qualifications, experience and expert abilities that Feeney claims to possess, should have revealed and reported the said structural deficiencies in the vessel and correlating diminution in its seaworthiness and market value.

16. That as a direct and immediate consequence of Feeney's acts and omissions, Deering purchased the XTREMELY FUELISH, and at a price far in excess of what it was worth, and incurred great, additional, and unanticipated repair expense in order to make it safe and seaworthy for his anticipated use.

17. That as a result, Plaintiff Deering has incurred damages far exceeding Seventy Five Thousand and 00/100 Dollars ($75,000.00).

<u>**COUNT I**</u>
<u>**(INTENTIONAL, GROSSLY NEGLIGENT OR NEGLIGENT ACTS AND OMMISSIONS OF THE DEFENDANT, BERNARD FEENEY**</u>

18. Plaintiff realleges paragraphs 1 through 17.

19. Because he held himself out as having a specific expertise in the endeavor of performing Marine Surveys and reports for same, Feeney owed a duty of care consistent with that of a reasonably prudent and similarly situated professional possessing the same level and type of expertise in Marine Surveying Feeney claimed to possess.

20. Defendant Feeney also owed certain duties of ordinary due care as well as duties under common law and statute, and relevant standards of the Marine Surveying industry which he breached including the following:

    a. Failing to properly inspect the hull and its structural members for moisture and rot or to otherwise report the results thereof, including but not limited to the main centerline stringer below the salon floor and aft of the head on starboard, the plywood framing forward of the fuel tanks, the transom, the port outboard stringer, and port side of hull at generator, port side of the hull above the chine aft and other interior framing;

    b. Failing to utilize proper equipment in the inspection process, including but not limited to the use of approved and recognized moisture meters;

    c. Failing to use or otherwise report the results of proper, approved and recognized methods of testing for moisture and rot including percussion testing;

    d. Failing to properly inspect the accessible exterior and interior areas of the hull and its said structural members for moisture, rot and dry rot, or to

otherwise report the results thereof;

  e. Failing to test and inspect for, or otherwise report, high moisture readings on the transom, center stringer, transom plywood, and other structural components of the hull;

  f. Failing to perform his inspections or otherwise report the results thereof skillfully, carefully, diligently, and in a workmanlike manner;

  g. Failing to advise or otherwise warn of the diminution in value and the cost to repair in order to make the vessel seaworthy and safe;

  h. Failing to meet the standard of care promulgated by the Society of Accredited Marine Surveyors, Inc. in his inspection, marine survey and reporting;

  i. Failing to inspect for, or otherwise report delaminations in the hull;

  j. Failing to meet the standard of care promulgated by the United States Coast Guard under the authority of Title 46 United States Code;

  k. Failing to meet the standard of care, voluntary standards and recommended practices developed by the American Boat and Yacht Council;

  l. Failing to meet standard of care, voluntary standards and recommended practices expected of a professional engineer;

  m. Failing to meet the standard of care promulgated by the National Association of Marine Surveyors;

  n. Failure to meet the standard of care expected of a

professional marine surveyor with 55 years of marine experience;

  o. Failure to meet the standard of care of a professional with extensive marine repair experience;

  p. Promising to sound the hull and check it for voids, delaminations, existing damage and to sight the hull for moisture incursion with an approved and recognized moisture meter known as the Electrophysics GRP 33 moisture meter, failing to do same or else failing to report the results of same;

  q. Promising to determine the condition and fair market value of the vessel, as well as its suitability for its intended use and insurability and failing to do so or else failing to accurately report the results thereof;

  r. Promising to identify and address issues and problems consistent with the experience and standard of care of a professional with a solid background in vessel operation, construction, and repair and failing to do so or else failing to accurately report the results thereof;

  s. Promising that his Pre-Purchase Survey would be the most comprehensive type of inspection that would determine the vessel's condition including all vessel systems, structural integrity, and overall maintenance and failing to do so or else failing to accurately report the results thereof;

  21. As a direct and proximate result of Defendants' said breach of duties, Feeney either unknowingly, recklessly or intentionally placed Plaintiff Deering in a position of harm that resulted in Deering sustaining losses totaling at least Seventy Five Thousand and 00/100 Dollars ($75,000.00) as follows:

      a.    In reliance on Feeney's promises, contractual obligations, survey and Report of Marine Survey Plaintiff Deering purchased the XTREMELY FUELISH, paying $40,000 too much for it and beyond its fair market value;

      b.    In reliance on Feeney's promises, contractual obligations, survey and Report of Marine Survey Plaintiff Deering purchased the XTREMELY FUELISH after which he was forced to incur over $84,000 in unanticipated repairs necessary to remedy structural deficiencies Defendant promised to inspect and test for and otherwise report but failed to do so ;

      c.    Other consequential and incidental damages;

      d.    Legal expenses, attorney fees, expert fees, court costs and litigation expenses incurred;

22.    That the said damages suffered by Plaintiff Deering were not only reasonably foreseeable as a probable consequence of Feeney's breach of duties, but are all said damages which flow naturally, directly and necessarily from Feeney's wrongful acts and omissions and are the legal and natural consequence of same.

23.    As a direct and proximate result of Defendant Feeney's breach of duties, Plaintiff Deering sustained damages in an amount of at least Seventy-Five Thousand and 00/100 Dollars ($75,000.00)

WHEREFORE, Plaintiff, Patrick D. Deering, respectfully requests judgment against Defendant, Bernard Feeney, d/b/a Gulf of Maine Boat Surveyors., in an amount of at least Seventy-Five Thousand and 00/100 Dollars ($75,000.00),

together with statutory costs, judgment interest and attorney fees allowed by law.

## COUNT II

### (BREACH OF CONTRACT BY DEFENDANT, BERNARD FEENEY)

24. Plaintiff re-alleges paragraphs 1 through 23.

25. That in June 2019, Plaintiff Patrick D. Deering and Defendant Bernard Feeney negotiated and entered into a contract for Feeney to Survey, inspect, and otherwise provide his Report of Marine Survey for a vessel known as the "EXTREMELY FUELISH," then located in Mendon, Massachusetts

26. At the time of said contract negotiations, Defendant Feeney represented to Deering that his Pre-Purchase Survey and Report of Marine Survey would be the most comprehensive type of inspection that would determine the vessel's condition including all vessel systems, structural integrity, and overall maintenance, determine its market value, and fitness for Deering's intended use of the vessel for Great Lakes cruising.

27. That at the time of those contract negotiations Defendant Feeney was advised by Deering that he would be relying on Feeney's marine survey and Report of Marine Survey to determine whether or not he would purchase the vessel, the appropriate price to pay for same and for insurance purposes in establishing that the vessel was an acceptable risk to insure.

28.. That it was certainly within the contemplation of the parties at the

time of contracting that Deering would rely on Feeney's expertise, promises, representations, care and performance of his contractual duties to inspect and test for structural defects and overall market value of the vessel in determining whether to purchase, insure and personally use the vessel with his family and friends and that a breach of those contractual duties by Feeney would result in actual and consequential damages to Deering naturally flowing from same, including Deering having to pay for necessary, immediate, extensive, unanticipated repairs on a vessel that he otherwise had also paid well beyond market value for same.

29. That Defendant Feeney breached his contract with Deering as follows:

a. Failing to properly inspect the hull and its structural members for moisture and rot or to otherwise accurately report the results thereof, including but not limited to the main centerline stringer below the salon floor and aft of the head on starboard, the plywood framing forward of the fuel tanks, the transom, the port outboard stringer, and port side of hull at generator, port side of the hull above the chine aft and other interior framing;

b. Failing to utilize proper equipment in the inspection process, including but not limited to the use of approved and recognized moisture meters;

c. Failing to use or otherwise accurately report the results of proper, approved and recognized methods of testing for moisture and rot including percussion testing;

d. Failing to properly inspect the accessible exterior and interior

areas of the hull and its said structural members for moisture, rot and dry rot, or to otherwise accurately report the results thereof;

  e. Failing to test and inspect for, or otherwise accurately report, high moisture readings on the transom, center stringer, transom plywood, and other structural components of the hull;

  f. Failing to perform his inspections or otherwise accurately report the results thereof skillfully, carefully, diligently, and in a workmanlike manner;

  g. Failing to advise or otherwise warn of the diminution in value and the cost to repair in order to make the vessel seaworthy and safe;

  h. Failing to meet the standard of care promulgated by the Society of Accredited Marine Surveyors, Inc. in his inspection, marine survey and reporting;

  i. Failing to inspect for, or otherwise accurately report delaminations in the hull;

  j. Failing to meet the standard of care promulgated by the United States Coast Guard under the authority of Title 46 United States Code;

  k. Failing to meet the standard of care, voluntary standards and recommended practices developed by the American Boat and Yacht Council;

  l. Failing to meet standard of care, voluntary standards and recommended practices expected of a professional engineer;

  m. Failing to meet the standard of care promulgated by the

National Association of Marine Surveyors;

  n. Failure to meet the standard of care expected of a professional marine surveyor with 55 years of marine experience;

  o. Failure to meet the standard of care of a professional with extensive marine repair experience;

  p. Promising to sound the hull and check it for voids, delaminations, existing damage and to sight the hull for moisture incursion with an approved and recognized moisture meter known as the Electrophysics GRP 33 moisture meter, failing to do same or else failing to accurately report the results of same;

  q. Promising to determine the condition and fair market value of the vessel, as well as its suitability for its intended use and insurability and failing to do so or else failing to accurately report the results thereof;

  r. Promising to identify and address issues and problems consistent with the experience and standard of care of a professional with a solid background in vessel operation, construction, and repair and failing to do so or else failing to accurately report the results thereof;

  s. Promising that his Pre-Purchase Survey would be the most comprehensive type of inspection that would determine the vessel's condition including all vessel systems, structural integrity, and overall maintenance and failing to do so or else failing to accurately report the results thereof;

  30. That as a consequence of Defendant Feeney's breach of

contract, Deering incurred and is entitled to compensation for the following actual, consequential and incidental damages which were within the contemplation of the parties at the time of contract and flowing naturally from the breach:

    a.    In reliance on Feeney's promises, contractual obligations, survey and Report of Marine Survey Plaintiff Deering purchased the XTREMELY FUELISH paid $40,000 too much for it and beyond its fair market value;

    b.    In reliance on Feeney's promises, contractual obligations, survey and Report of Marine Survey Plaintiff Deering purchased the XTREMELY FUELISH after which he was forced to incur over $84,000 in unanticipated repairs necessary to remedy structural deficiencies Defendant had promised to inspect and test for and otherwise report but failed to do so ;

    c.    Legal expenses, attorney fees, expert fees, court costs and litigation expenses incurred;

    d.    Damages caused by loss of contractual expectations;

    e.    Any other damages which must be recompensed in order to put Deering in as good a position as he otherwise would have been in had Defendant Feeney properly performed and not breached his contract.

    31.    As a result of Defendant Feeney's breach of contract, Plaintiff Deering sustained damages in an amount of at least Seventy-Five Thousand and 00/100 Dollars ($75,000.00)

WHEREFORE, Plaintiff, Patrick D. Deering, respectfully requests judgment against Defendant, Bernard Feeney, d/b/a Gulf of Maine Boat Surveyors, in an

amount of at least Seventy-Five Thousand and 00/100 Dollars ($75,000.00), together with statutory costs, judgment interest and attorney's fees allowed by law.

MARVIN & ASSOCIATES
Attorneys for Plaintiff

Dated: 06-17-2022       By: _____
                            Richard A. Marvin (P41433)

Business Address:

**MARVIN & ASSOCIATES**
Attorneys and Counselors at Law
5181 Plainfield Ave., N.E., Suite C
Grand Rapids, MI  49525
(616) 447-1664

UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
************************************************************

PATRICK D. DEERING.

        Plaintiff,

v

BERNARD FEENEY, D/B/A
GULF OF MAINE BOAT SURVEYORS,

        Defendant.

Case No.:

Honorable

Original Action

---

Richard A. Marvin (P41433)
MARVIN & ASSOCIATES
Attorneys for Plaintiff
5181 Plainfield Avenue, N.E., Ste. C
Grand Rapids, MI 49525
Telephone: (616) 447-1664
Fax: (616) 447-1665
Email: rick@marvlaw.net

---

## DEMAND FOR JURY TRIAL

NOW COMES Plaintiff, Patrick D. Deering, by and through his attorney, Richard A. Marvin of Marvin & Associates, Attorneys and Counselors at Law, and hereby requests a trial by jury.

1

MARVIN & ASSOCIATES
Attorneys for Plaintiff

Dated: 06-17-22   By: _____
Richard A. Marvin (P41433)

Business Address:

**MARVIN & ASSOCIATES**
Attorneys and Counselors at Law
5181 Plainfield Ave., N.E., Suite C
Grand Rapids, MI 49525
(616) 447-1664

2